UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTT M. GILLIATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01494-TAB-JMS |
| | ) | |
| CAROLYN  COLVIN Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER[1]**

I.      **Introduction**

Pending before the Court is Plaintiff Scott M. Gilliatt's appeal of the Commissioner's

denial of his claim for disability benefits.  Gilliatt asserts that the Administrative Law Judge

erred in finding Gilliatt was not disabled by (1) failing to provide good reasons for discounting

two of his physicians and (2) making a patently wrong credibility determination about his severe

back pain.  For the reasons set forth below, Gilliatt's brief in support of appeal [Filing No. 20] is

denied.

---

[1] The Court had this matter set for oral argument on August 28, 2015.  However, a further review of the briefs suggested oral argument was not likely to be particularly helpful in resolving this matter.  Accordingly, the Court notified counsel that the oral argument would be vacated, and now formally vacates the August 28 argument.

## II.     Procedural Background

Gilliatt applied for disability insurance benefits on November 30, 2011, alleging

disability beginning April 30, 2009, through his date of last insured on March 31, 2013.[2]

Gilliatt's claim was denied initially on March 6, 2012, and on reconsideration May 2, 2012.  On

May 24, 2013, Gilliatt, who was represented by an attorney, testified at a hearing before the ALJ

and an impartial vocational expert.  On July 11, 2013, the ALJ issued her decision finding

Gilliatt not disabled.

At step one, the ALJ found that Gilliatt had not engaged in substantial gainful activity

during the relevant time period.  [Filing No. 14-2, at ECF p. 20.]  At step two, the ALJ found that

Gilliatt's severe impairments included post compression fractures of the thoracic spine at T5 and

T8, depression, and anxiety.  [Filing No. 14-2, at ECF p. 21.]  At step three, the ALJ concluded

that Gilliatt did not meet or equal any relevant listing.  *Id.*  At step four, the ALJ found Gilliatt

had the RFC to

> lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or
> walk for about 6 hours of an 8 hour workday and sit for about 6 hours of an 8 hour
> workday. He is occasionally able to climb ladders, ropes, scaffolds, ramps, or stairs
> and occasionally able to balance, stoop, kneel, crouch, or crawl.  He is limited to
> occasional exposure to hazardous moving machinery, raw chemicals or solutions,
> and unprotected heights.  He would need to be allowed one extra unscheduled work
> break per day lasting 10 minutes and would be limited to simple, routine, and
> repetitive tasks.

[Filing No. 14-2, at ECF p. 23.]  Relying on the VE's testimony, the ALJ found Gilliatt unable to

perform past relevant work.  [Filing No. 14-2, at ECF p. 30.]  At step five, the ALJ found Gilliatt

could perform jobs in the national economy as a cashier, mail clerk, and marker.  [Filing No. 14-

---

[2] Gilliatt also filed for benefits in September 2010 and January 2004.  Both applications were
denied and no requests for reconsideration were filed.  The ALJ found no reason to reopen these
prior claims, finding those decisions to be final and binding.  [Filing No. 14-2, at ECF p. 18.]

2, at ECF p. 31.]  This decision became final and appealable when the Appeals Council denied

Gilliatt's request for review.  This appeal followed.

### III.   Discussion

#### A.     Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports his findings.

*Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  "The substantial evidence standard requires

no more than such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Blakes v. Barnhart,* 331 F.3d 565, 568 (7th Cir. 2003).  The ALJ is obligated to

consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

of nondisability while ignoring evidence that points to a disability finding.  *Denton v. Astrue,* 596

F.3d 419, 425 (7th Cir. 2010).  If evidence contradicts the ALJ's conclusions, the ALJ must

confront that evidence and explain why it was rejected.  *Moore v. Colvin,* 743 F.3d 1118, 1123

(7th Cir. 2014).  The ALJ, however, need not mention every piece of evidence, so long as she

builds a logical bridge from the evidence to his conclusion.  *Pepper v. Colvin,* 712 F.3d 351, 362

(7th Cir. 2013).

#### B.     Physician opinions

The ALJ in the case at hand adopted the findings of the state agency medical consultants,

who found that Gilliatt could engage in light exertional activities with certain non-exertional

limitations.  [Filing No. 14-2, at ECF p. 30.]  The ALJ found that Dr. Black is an acceptable

treating physician "whose opinion must be considered," but gave no weight to the opinion of Dr.

Bangura, a nontreating physician.  [Filing No. 14-2, at ECF p. 29-30.]

          *1.    Dr. Black*

Gilliatt takes issue with the ALJ's determination that the May 2013 RFC questionnaire of

his treating physician Dr. Black was unsupported.  [Filing No. 14-2, at ECF p. 30.]  A treating

physician's opinion is entitled to controlling weight as long as it is well supported by objective

medical evidence and is consistent with other substantial evidence in the record.  20 C.F.R. §

404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  An ALJ is not required to

give a treating physician's opinion controlling weight, but must provide a sound explanation for

rejection. *Id.*

The ALJ here explained that Dr. Black's May 2013 RFC questionnaire was unsupported

because no objective findings substantiate his restrictive RFC (inability to lift more than 10

pounds, missing more than 4 days of work per month, and an inability to ever climb stairs).

[Filing No. 14-2, at ECF p. 30.]  Gilliatt makes three arguments that the ALJ erred in discrediting

Dr. Black's questionnaire.  The Court takes each in turn.

First, Gilliatt argues the ALJ's assertion that he has never used an assistive device to walk

is erroneous, pointing to his own testimony and to a page of Dr. Bangura's notes.  Turning to the

evidence, Gilliatt's use of a walking stick is documented several times by Gilliatt and Drs. Black

and Bangura.  [Filing No. 14-2, at ECF p. 64, 81; Filing No. 14-10, at ECF p. 3; Filing No. 14-

17, at ECF p. 3, 114.]  Gilliatt is correct that this evidence supports Dr. Black's opinion about his

use of an assistive walking device.  The ALJ's statement was therefore erroneous.

However, the Commissioner contends that Gilliatt's walking stick is not "medically

required," so it would not affect the disability determination.  "To find that a hand-held assistive

device is medically required, there must be medical documentation establishing the need … and

describing the circumstances for which it is needed."  SSR 96-9p.  The strongest supporting

*medical* documentation here is Dr. Black's selection of "yes" on a check-box form to: "While

engaging in occasional standing/walking, must your patient use a cane or other assistive device?"

A check-box form is weak evidence, especially when it is not supported by medical records.

*Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  There is only one other notation by Dr.

Black, "He walks with cane," to support a medical need.  [Filing No. 14-17, at ECF p. 3.]  The

Commissioner correctly argues that the standard of "medically required" cannot be met.  Gilliatt

points to *Parker v. Astrue*, which states "[a] cane does not require a prescription."  597 F.3d 920,

922 (7th Cir. 2010).  But in context, *Parker* explains how lack of a prescription for a cane should

not weigh against the credibility of a plaintiff who states that he needs one.  *Id.*  Thus, Gilliatt's

claim that he uses a walking stick may be credible, but it would still not be medically required

for purposes of the disability determination.

Even if it were medically required, the Commissioner also points to the VE's testimony

that using an assistive walking device would not affect Gilliatt's ability to perform work, unless

it is so large that it could be considered a weapon or a hazard.  [Filing No. 14-2, at ECF p. 81.]

Neither the ALJ nor the parties indicate Gilliatt's walking stick might be this large.  A case

should not be remanded where an ALJ will reach the same result. *Pepper*, 712 F.3d at 367.

Here, the Commissioner has shown that if the ALJ gives more weight to Gilliatt's need for a

walking stick, it will not change her determination that he is not disabled or that he is able to

work.  Accordingly, any error was harmless.

The second argument Gilliatt makes that the ALJ erred in discrediting Dr. Black's

questionnaire is that the ALJ engaged in "cherry-picking."  An ALJ may not cherry-pick facts

and ignore evidence that points to a disability finding. *Denton*, 596 F.3d at 425.  But every piece

of evidence does not need to be mentioned, as long as the ALJ builds a logical bridge from the evidence to her conclusion. *Id.*

The ALJ found that Gilliatt's gait, stance, and range of motion in his lower extremities were repeatedly described in the record as normal, which conflicted with Dr. Black's questionnaire. [Filing No. 14-2, at ECF p. 30.] Gilliatt asserts the ALJ cherry-picked the normal reports and ignored Dr. Sturman's reports, which would hinder a logical conclusion that Gilliatt is repeatedly described as normal. Gilliatt points to a large part of the ALJ's discussion on Dr. Sturman's treatment notes, which uses words such as tender and guarded. [Filing No. 14-2, at ECF p. 25.] But these notes do not discuss Gilliatt's station or range of motion in his lower extremities. As for gait, Dr. Sturman describes it once as guarded [Filing No. 14-16, at ECF p. 25] and once as slightly guarded. [Filing No. 14-16, at ECF p. 26.] The Commissioner points out the ALJ found Gilliatt was "repeatedly," not "only," described as normal. Moreover, the ALJ was not required to specifically mention those two notes on gait. Dr. Black's own progress notes describe Gilliatt's gait as normal, and it is difficult to find error with the ALJ's statement to that effect. [Filing No. 14-9, at ECF p. 54.] There is not enough evidence to support a finding that the ALJ "cherry-picked" the medical evidence related to Gilliatt's gait, nor that her conclusion he was repeatedly described as normal was erroneous.

Third, Gilliatt takes issue with the ALJ's statement about Dr. Black's questionnaire, "there are no objective findings to substantiate such a restrictive RFC." [Filing No. 14-2, at ECF p. 30.] Gilliatt argues the ALJ ignored a "wealth of overwhelming corroborating medical evidence" in the record. [Filing No. 20, at ECF p. 15.] However, he only points to a neurological pathology report, which includes the results of Gilliatt's MRI showing compression points on his spine. [Filing No. 14-11, at ECF p. 54.] Notably, the pathology report does not

allege he has any lower back pain, and the paragraph quoted in Gilliatt's argument goes on to say that his spinal lumbar MRI was unremarkable.  *Id.*  The ALJ found Gilliatt's spinal compression fractures were a severe impairment.  [Filing No. 14-2, at ECF p. 21.]  The Commissioner contends that the pathology report does not render Dr. Black's restrictive RFC well-supported.  It is unclear, and Gilliatt does not specify, what part of Dr. Black's questionnaire the pathology report supports.  Nor does Gilliatt elaborate on the purported wealth of evidence he believes the ALJ ignored.  The general existence of some objective evidence which may or may not corroborate Dr. Black's questionnaire is not enough to warrant remand.  Therefore, Gilliatt's argument is unconvincing.

Finally, it is notable that the parties also argue about the ALJ's comment that the handwriting and the signature on Dr. Black's questionnaire do not appear to match.  [Filing No. 14-2, at ECF p. 30.]  The ALJ's comment is somewhat perplexing because medical professionals may rely on assistants to complete tasks.  In reviewing the questionnaire, it seems reasonable that the ALJ believed an assistant completed the questionnaire with Gilliatt; the questionnaire uses the phrase "patient states" and the handwriting does appear different.  [Filing No. 14-20, at ECF p. 6-10.]  Nevertheless, Dr. Black signed the questionnaire and provided it as a part of his records.  The ALJ's decision to discredit Dr. Black's questionnaire was within her discretion, and her analysis was not focused on a suspicion that he did not personally complete the form.  The ALJ relied on significant other reasons for discounting the questionnaire.  [Filing No. 14-2, at ECF p. 30.]

Overall, the ALJ reasonably found that Dr. Black's May 2013 RFC questionnaire was not well supported and was inconsistent with other medical evidence in the record.  The ALJ supported her conclusion with substantial evidence and remand is not appropriate on this issue.

2.      *Dr. Bangura*

The ALJ gave no weight to the opinion of Dr. Bangura. [Filing No. 14-2, at ECF p. 29-30.]  Gilliatt argues the ALJ's evaluation of Dr. Bangura's opinion was erroneous.

Dr. Bangura examined Gilliatt, but expressly stated that she was not his treating physician and did not intend to become one.  [Filing No. 14-10, at ECF p. 3.]  As a nontreating source, Dr. Bangura's opinion is not entitled to the same controlling weight as a treating physician.  *See* 20 C.F.R. § 404.1502; *Simila v. Astrue,* 573 F.3d 503, 514 (7th Cir. 2009).  When weighing the opinion of a nontreating source, an ALJ is not required or permitted to accept evidence that is inconsistent with other medical or nonmedical evidence in the record.  *Id.* at 515.  An ALJ determines the weight a nontreating physician's opinion deserves by examining how well it is supported and explaining whether it is consistent with the record.  *Id.*

Here, the ALJ properly declined to give weight to Dr. Bangura's opinion by explaining how it lacked consistency and supportability regarding Gilliatt's functional limitations.  [Filing No. 14-2, at ECF p. 29-30.]  The ALJ found that Dr. Bangura's stated restrictions for Gilliatt's ability to sit, carry, and handle objects were unsupported, appearing to be based on Gilliatt's own reports of his abilities.  [Filing No. 14-2, at ECF p. 29.]  The ALJ also concluded that this was inconsistent with other findings in Dr. Bangura's report.  *Id.*  Particularly, Gilliatt's range of motion was essentially normal, except in his spine and shoulders.  *Id.*

Gilliatt argues the ALJ's evaluation of Dr. Bangura's opinion was erroneous because Gilliatt's ability to stand or walk for two hours was supported by his inability to walk on his heels.  [Filing No. 14-14, at ECF p. 5.]  Gilliatt points out that an inability to walk on heels may be considered evidence of significant motor loss.  20 C.F.R. § 404, Subpt. P, App. 1(E)(1).  The Commissioner argues the ALJ's conclusion on supportability was reasonable, considering Dr.

Bangura's notes included Gilliatt's self-reports that he cannot get up and move around.  [Filing No. 14-10, at ECF p. 3.]  The Commissioner asserts that although an inability to walk on heels may support significant motor loss, Dr. Bangura's opinion did not report that Gilliatt had significant motor loss.

Turning to the ALJ's opinion, she did not overlook Dr. Bangura's finding that Gilliatt was not able to walk on his heels because it is specifically included in the ALJ's analysis. [Filing No. 14-2, at ECF p. 29.]  The ALJ decided Dr. Bangura's opinion should not receive any weight and her reasons for rejecting it were proper, addressing supportability and consistency. The ALJ pointed out Dr. Bangura restricted Gilliatt's ability to sit, stand, lift, carry, and assessed limitations on his memory, understanding, concentration, and social interaction.  *Id.*  But as the ALJ explained, these restrictions were not consistent with Dr. Bangura's own examination notes that Gilliatt had full range of motion, that his gait and station were normal, that he was able to bend and raise his legs, and that he had full muscle strength, reflexes, grip, and movement.  *Id.* Additionally, Dr. Bangura's opinion has a section describing what Gilliatt stated to her, where he reported an inability to move, constant pain, and no desire to leave his house.  [Filing No. 14-10, at ECF p. 3.]  The ALJ pointed out Gilliatt's complaints were not supported by Dr. Bangura's examination notes.  [Filing No. 14-2, at ECF p. 29.]  Although Dr. Bangura examined Gilliatt and documented her observations and opinion, the ALJ reasonably found inconsistencies and gave a sufficient explanation for finding the opinion was based more on Gilliatt's complaints than the examination.  *Id.*

Accordingly, the ALJ's reasons for rejecting Dr. Bangura's opinion were proper.  The ALJ's analysis was not erroneous and remand is not appropriate on this issue.

C.    *Credibility of back pain in the RFC*

The ALJ did not find Gilliatt's statements about his limitations credible.  [Filing No. 14-2, at ECF p. 29.]  The ALJ also stated Gilliatt is prone to exaggerating his condition, pointing to his assertions that a bone scan showed he had the bones of an 80-year-old woman and that Dr. Black told him if he runs out of medication his heart may shut down.  [Filing No. 14-2, at ECF p. 27.]

The RFC is the ALJ's administrative assessment of the extent an individual's impairments may cause physical or mental limitations or restrictions that may affect his ability to perform work-related activities.  SSR 96–8p.  The ALJ is responsible for determining the RFC by considering credible information from the entire case record.  20 C.F.R. § 404.1527(d)(1); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

An ALJ is in the best position to make a credibility determination.  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  An ALJ's credibility determination is entitled to deference, unless her determinations rest on subjective considerations instead of objective factors.  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  An ALJ's credibility determination will only be overturned if patently wrong; that is, unreasonable or unsupported.  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Here, the ALJ determined that Gilliatt's allegations of severe back pain were not credible because they were unsupported by medical evidence.  [Filing No. 14-2, at ECF p. 29.]  Gilliatt makes four arguments as to why this determination was patently wrong.

First, Gilliatt argues that the ALJ's statement—no objective evidence supports such restrictions—is undermined by the evidence of his spinal compression fractures.  The Commissioner contends that the ALJ already found these fractures were severe; the ALJ's

10

statement here refers to the severity of the restriction, not the existence of a limitation or the source of the pain.  As explained in the above analysis of Dr. Black's RFC questionnaire, the existence of "some objective evidence" which *could* corroborate certain restrictions is not enough to support a remand.

Second, Gilliatt argues the ALJ erred by failing to discuss how Dr. Sturman's opinion corroborates his allegations of severe back pain.  Gilliatt distinguishes Dr. Sturman as the only neurologist to examine him, noting that Dr. Sturman increased his morphine dosage, and encouraged him to file for disability.  Specifically, Gilliatt alleges this encouragement to file for disability translates to Dr. Sturman's belief that he could not work.  [Filing No. 20, at ECF p. 18.]  The Commissioner contends that this type of encouragement is not a medical opinion and would not be given controlling weight, even if Dr. Sturman could be considered a treating physician.

The Commissioner's contention has merit.  Medical opinions "reflect judgments about the nature and severity of your impairment(s)."  20 C.F.R. § 404.1527(a)(2).  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id.* at (d)(1).  So even if Dr. Sturman implied that Gilliatt could not work, the ALJ was still not required to discuss it, particularly since encouraging Gilliatt to file for disability was not a medical opinion.  *See Haynes v. Barnhart*, 416 F.3d 621, 631 (7th Cir. 2005).  Thus, the Commissioner's argument prevails.

Third, Gilliatt argues his back pain should not have been discredited on account of his treatment being limited to narcotic pain medication only.  Part of the ALJ's reason for finding that Gilliatt's disabling back pain was not credible was because he did not seek more serious treatment, such as injections, physical therapy, or surgery.  [Filing No. 14-2, at ECF p. 29.]

Gilliatt contends the ALJ ignored evidence that the dosage amounts of his pain medication had to be increased, supporting the severity of his back pain.  However, the Commissioner contends the ALJ did not ignore this evidence, identifying her discussion of Gilliatt's medication which lists the names of the drugs, increases and decreases in dosages, and refills.  [Filing No. 14-2, at ECF p. 24.]  The Commissioner contends that the ALJ reasonably discussed Gilliatt's treatment for back pain in her credibility analysis.

The applicable regulation supports the Commissioner's contention.  It confirms that Gilliatt's statements about his back pain "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7p.  Gilliatt does not respond to the Commissioner's argument in his reply brief, but the Court notes that an ALJ is not allowed to draw inferences about a claimant's failure to seek or pursue treatment without first considering explanations from the individual or the record.  *Id.*  Here, the ALJ considered that Gilliatt declined to wear his prescribed lumbar support brace or attend physical therapy.  [Filing No. 14-2, at ECF p. 28, 55, 65; Filing No. 14-17, at ECF p. 8, 13, 23.]  The ALJ also inquired about Gilliatt's reasons for his course of treatment.  [Filing No. 14-2, at ECF p. 65.]  By doing this, the ALJ fulfilled her obligation under SSR 96-7p.  Gilliatt did not convincingly demonstrate that the ALJ committed error.  Accordingly, the scales tip in favor of the Commissioner.

Finally, Gilliatt argues the ALJ is clearly erroneous in asserting there was no evidence that he fell from a building and injured his back.  Gilliatt points to his own testimony and argues that his spinal compression fractures are "common-sense evidence" that his back was injured according to his testimony.  [Filing No. 20, at ECF p. 19.]

An ALJ may disregard an individual's allegations of pain if she validly finds credibility lacking.  *Prochaska*, 454 F.3d at 738.  Gilliatt testified, "I fell through a two-story building, and I

was in a bad car accident, and I'm not sure what caused it at first.  Probably one of them.  But it just gradually got worse." [Filing No. 14-2, at ECF p. 43.]  This testimony is only supported by a similar statement Gilliatt made in a hospital record.  [Filing No. 14-11, at ECF p. 36.]

The ALJ here concluded there is no evidence to support Gilliatt's allegation that he fell through a building.  [Filing No. 14-2, at ECF p. 28.]  Gilliatt does not point to evidence (aside from his own reports) showing that his back injury was caused by falling from a building.  And Gilliatt's testimony only offers his fall from a building as a possible cause.  The Court finds no case law to support Gilliatt's argument that the disability itself is "common-sense evidence" of the incident causing its onset.  Gilliatt's falling through a building is merely one of two possible causes, which tends to support the ALJ's credibility determination.  Gilliatt does not offer convincing evidence that the ALJ's conclusion was erroneous.  Therefore, the ALJ's credibility determination stands.

Overall, the ALJ gave good reasons for her credibility determination of Gilliatt's alleged back pain, which were supported by the record and not patently wrong.  This Court will affirm an ALJ's credibility determination as long as she gives specific reasons that are supported by the record.  *Skarbek*, 390 F.3d at 504.  Therefore, the ALJ's credibility determination is affirmed.

## IV.      Conclusion

For the foregoing reasons, the Court denies Gilliatt's brief in support of appeal [Filing No. 20] and affirms the Commissioner's decision.


Date:  9/10/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Thomas B. Browder
KELLER & KELLER
tomb@2keller.com

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov